OPINION. MuRdock, Judge: The petitioner claims that he is entitled, as sole proprietor of the business of Terra Ceia Bay Farms, to claim the entire amount of its losses in computing income on his joint returns and in carrying forward or carrying back the resulting net operating losses, and even if the operation is to be regarded as a joint venture, still he is entitled to use half of those losses for the same purposes. He does not contend that he was a partner with River in the business and their agreements expressly disavow any such relationship. The parties are agreed on the net results of the operation of the Terra Ceia Bay Farms business from July 1, 1943, through December 31, 1945. It is important to remember that the petitioners reported their income on the basis of cash receipts and disbursements, the petitioner put no cash or property into the business, the only money put into the venture was furnished by River, and the petitioner under no circumstances was ever obligated to reimburse River for more than one-half of the money advanced. The losses used up a part of the money furnished by River. Thus, under no circumstances would the petitioner have the right to claim, in computing his income, more than the share which he stood to lose in the venture, that is, one-half. Furthermore, no theory advanced by the petitioner would justify the Court in allowing him to deduct any part of the operating losses of Terra Ceia Bay Farms in computing his income for the taxable years. It is obvious that both River and the petitioner were involved in the operation of the business, regardless of what the operation is called. The operation was to continue until June 30,1948. River advanced the money to buy the properties and to operate them. It was to share in the profits and it sustained all of the losses until such time as the petitioner made payments on its notes, although the agreements do not contain any express provisions in regard to losses. The petitioner was not to spend any money except that put up by River or that derived from the operation. The petitioner was to have a one-half interest in the land, equipment, and business at June 30, 1948, if the venture proved successful and if he paid off his notes to River. He gave his promissory notes in the amount of $94,526 to evidence the fact that he owed his associate, River, that much money under the agreements. However, he never put his potential share of the losses on a cash and closed basis by paying a part of the principal of those notes and at the end of 1945 they were cancelled. He had suffered no out-of-pocket losses in connection with the operation of the business up to that time. The transaction did not terminate at that point, however, although the original arrangement was changed. The business was then incorporated. The petitioner received at that time one-half of the stock of the corporation and a note of the corporation in the amount of $94,526. He immediately endorsed the note to River and pledged the stock with River as collateral for his endorsement of the note. Clearly, those events did not change his situation so that he suffered any loss. He never paid anything on the note of the corporation up to the time of the hearing. Indeed, the only money which ever came out of his pocket during the entire transaction was the interest on his own notes from the date of their issuance up to January 1,1946, which amount is not here in dispute, probably because he claimed and was allowed deductions on his returns for the payment of that interest. A taxpayer, using the cash receipts and disbursements basis, has no right to deduct, on his own return an operating loss of a business under such circumstances until he is actually out of pocket by making payments on the notes which he gave to his associate in the business to evidence his promise to reimburse that associate for one-half of the money advanced and lost in the unsuccessful operation of the business. Max Gross, 36 B. T. A. 759; Page v. Rhode Island Hospital Trust Co., 88 F. 2d 192. The Commissioner has held and contends that the petitioner realized •a capita] gain of $54,263 as a result of his transfer of his interest in the business to the corporation in’exchange for one-half of the stock of the ■corporation and its note lor $94,526. The record does not show how the Commissioner computed that gain, but his counsel states that it is •one-half of a long term capital gain of $108,526. He does not explain how he computes the gain of $108,526. The evidence shows, however, that the petitioner realized no gain in that transaction. The corporation received all of the assets of the business having a book value at that time of about $80,000 and a fair market value of less than $100,-000. It also received another property worth $30,000. It immediately issued its notes for over $219,000. There were no free assets at that ■time to give its stock any value. Furthermore, as one of the inseparable steps of the entire transaction, the petitioner was required to pledge his stock as collateral with River. The petitioner’s note for $94,526 was held by River prior to the transaction and at the conclusion of the transaction River held the note of the corporation, endorsed by the petitioner, for the same amount of money secured by the pledge of the petitioner’s stock. It thus appears that River let go of nothing by the transaction and the petitioner gained nothing. Incidentally, he never thereafter gained possession of the stock or the note. His liability as endorser on the note of the corporation was not sufficiently different from his former primary liability on his own note to give rise to any gain. The Commissioner erred in adding the $54,263 to the petitioners’ income for 1946. The petitioners, not knowing how the alleged gain of $54,263 was computed, pleaded and introduced evidence in connection with the transfer by Anne to the corporation of her one-half undivided interest in Suburban Holdings. Although the Commissioner contends that the entire gain of $108,526 was realized by the husband, nevertheless, he also claims that Anne realized a long term capital gain of $13,298 as a result of the sale of her property. There is no direct testimony as to the value of the note but no interest or principal has ever been paid on it. The petitioners argue that it could not have had a value in excess of the cash which the corporation had on January 1, 1946. The total notes which the corporation had outstanding on January 1, 1946, were almost double the value of its assets. There is some indication that the business began to improve in 1945, but there is no evidence to show what the situation was in 1946. The Court, on the basis of the meager evidence before it, has determined that the value of the note at the time it was received by Anne was $10,000. A long term capital gain of $8,298 results. The petitioners claimed a deduction for depreciation on a cottage owned by Anne during 1946. She reported income of $255 from rent and claimed a deduction of $450 for depreciation on the cottage for 1946. The Commissioner disallowed the entire deduction. His action was obviously wrong because the property had some remaining basis and it was rented during the year. The petitioners are entitled to some deduction for depreciation. They were unable to prove the cost of the cottage or what its basis was at the beginning of 1946. They proved, however, that the basis was at least $4,500 and they do not claim a basis in excess of $7,500. Here again the Court is required to make some kind of a decision and has concluded that a reasonable allowance for depreciation for 1946 is $255. Cf. Cohan v. Commissioner, 39 F. 2d 540. The Commissioner has conceded a. number of other adjustments which will be made under Rule 50. Decision will be entered under Bide 50.